**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MARIBEL VALENTÍN-RODRÍGUEZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

12-cv-1488 (MEL)

**OPINION AND ORDER**

## I. PROCEDURAL HISTORY

Maribel Valentín-Rodríguez ("plaintiff" or "claimant") was born in 1967 and has completed high school. (Tr. 353, 343). Prior to her initial application for Social Security disability benefits, plaintiff worked as a sewing machine operator in a clothing factory from 1987 until March 2009. (Tr. 338). In 1994, she briefly worked as a quality control inspector for a tuna packing company. Id. On May 5, 2009, plaintiff filed an application for Social Security disability benefits, alleging disability on the basis of herniated discs, diabetes, carpal tunnel syndrome, retinopathy, and muscular spasms in the shoulders and neck. (Tr. 22, 337). The alleged onset date of her disability was March 19, 2009, and the end of the disability insurance period is September 30, 2014. (Tr. 22). Plaintiff's application was denied initially on October 2, 2009, and upon reconsideration on March 25, 2010. (Tr. 50, 54).

Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which took place on July 27, 2010. (Tr. 34). She waived her right to appear and testify, but was represented by counsel at the hearing. (Tr. 56-57). Mr. David A. Festa ("Mr. Festa"), a vocational expert ("VE"), provided testimony via teleconference at the hearing. (Tr. 37). On

November 5, 2010, the ALJ rendered a decision denying plaintiff's claim, finding she was not disabled. (Tr. 22-29). The Appeals Council denied plaintiff's request for review on April 18, 2012. (Tr. 8). As such, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). Id. On June 19, 2012, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that plaintiff was not disabled was not based on substantial evidence. ECF No. 1, ¶¶ 2, 6. On June 18, 2013, defendant filed an answer and a certified transcript of the administrative record. ECF Nos. 15, 16. Both parties have submitted their supporting memoranda of law. ECF Nos. 21, 24.

## II. STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520 (2012); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999). If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. If the ALJ concludes in steps one through four that the claimant's impairment or impairments are severe and do prevent him from performing past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

## III. MEDICAL EVIDENCE SUMMARY

The certified record contains, *inter alia*, the following medical evidence regarding plaintiff's conditions, which—as one of his findings—the ALJ determined included a "severe combination of impairments [consisting of] diabetes mellitus, mild arterial hypertension, bilateral carpal tunnel syndrome, diabetic polyneuropathy by electromyogram (EMG), degenerative disc

[1] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

disease of the cervical and lumbar spine, radiculopathy at the LF-S1 level by electromyogram (EMG) and disc bulging, dissecation and degeneration at the L4-L5 and L5-S1 levels by magnetic resonance imaging (MRI) study." (Tr. 24-25).

On July 2, 2009, a magnetic resonance imaging ("MRI") of claimant's lumbosacral spine showed L4-L5 and L5-S1 central bulging discs with acquired central canal stenosis at L4-L5, and showed L4-L5 and L5-S1 disk dissecation and degeneration, but no other disk bulging or protrusions were seen. (Tr. 162). The MRI showed no nerve root impingement, and the intra and extra spinal lumbar nerve roots appeared intact. Id. Approximately one month later, on August 5, 2009, Dr. Samuel Méndez ("Dr. Méndez") conducted a neurological evaluation of the claimant. He diagnosed her with "chronic lumbalgia and cervicalgia; lumbo sacral syndrome – by history; [and] bilateral carpal tunnel syndrome." (Tr. 447). In the summary of patient's history, Dr. Méndez noted that plaintiff claimed that "walking for more than fifteen minutes, raising her arm, lifting more than six pounds, and remaining in the same position for more than one hour exacerbate[d] her symptoms" (Tr. 445). He noted plaintiff had complained of lower back pain, constant neck and shoulder pain, and hand numbness since the year 2000. Id.

Upon examination of the plaintiff, Dr. Méndez found "tender cervical and lumbar paraspinal muscles," but that strength was "5/5 symmetrically in all extremities, except for psoas and grips 4/5 (limited by pain)"; in other words, the muscular strength of her right and left hand were 4/5. (Tr. 446, 451). While Dr. Méndez described her gait as antalgic with a rigid spine, on the same day, plaintiff had an "unremarkable" MRI of her cervical spine that showed "prevertebral soft tissue within normal, no compression deformities, and disc space preserved." (Tr. 451, 453). On September 22, 2009, an MRI of the claimant's cervical spine indicated

"degenerative changes," "decreased intervertebral space at C5-C6," but no fracture or dislocation. (Tr. 156).

The claimant's RFC assessment was made on September 30, 2009 by Dr. S. Park ("Dr. Park"), and this assessment is accompanied by a case analysis sheet signed by Dr. Barbara O'Neill Díaz ("Dr. O'Neill") on October 1, 2009, both of whom are state agency medical consultants. (Tr. 462, 454). Dr. Park reviewed the medical evidence and determined claimant's RFC as: being able to sit with normal breaks for about six hours in an eight-hour work day; to stand and walk for about six hours in an eight-hour work day; to push or pull in an unlimited capacity; to lift/carry a maximum of twenty pounds occasionally; and to lift/carry a maximum of ten pounds frequently. (Tr. 456). He assessed that claimant should climb and stoop only occasionally. (Tr. 457). Dr. Park also determined that claimant had an unlimited ability for handling (gross manipulation), fingering (fine manipulation), reaching in all directions, and feeling. (Tr. 458). He indicated that claimant had motor strength of 5/5, except for grasp power at 4/5. (Tr. 462). Finally, he found x-ray of the claimant's cervical spine unremarkable, and that claimant's "pain and allegation [were] not fully supported by [medical evaluation]." Id.

On December 2, 2009, claimant had another MRI of her cervical spine, which showed, *inter alia*, indications of "central posterior disk protrusion at C5-C6 with compression upon the ventral aspect of the thecal sac." (Tr. 151, 473). On December 11, 2009, claimant's treating physician, Dr. Carmen Berríos ("Dr. Berríos"), submitted a medical report with an assessment of claimant's impairments. (Tr. 145, 467). Per this report, it appears Dr. Berríos had seen claimant more than ten times since the alleged onset date of disability on March 19, 2009. (Tr. 145). In her report, Dr. Berríos assessed that plaintiff was limited to very sedentary work: she was able to stand for no more than ten minutes at a time, and could also only sit for five to ten minutes at a

time before needing to get up frequently to walk for ten to fifteen minutes. (Tr. 146, 148, 470). In contrast to Dr. Park's evaluation, Dr. Berríos noted that plaintiff could only occasionally lift less than ten pounds, and that she had significant limitations with reaching, handling, and fingering. (Tr. 149, 471). Claimant's symptoms in Dr. Berríos' report included severe neck pain, radiating to the left upper extremity with loss of strength, numbness, and inflammation to the fingers and wrist, and severe LBP (lumbosacral) pain, radiating to the left lower extremity which makes the extremity give in. (Tr. 146).

On February 3, 2010, Dr. B. Cortijo ("Dr. Cortijo"), a specialist with the Social Security Administration, assessed plaintiff's conditions from the record and concurred with the RFC determined by Dr. Park on September 30, 2009. He noted that Dr. Berríos had reported "very restricted limitations . . . but then the physical exam findings she provide[d] [did] not in any way support the limitations she propose[d]." (Tr. 487). For example, Dr. Cortijo stated that Dr. Berríos reported plaintiff's gait was normal, and that she could "never" lift or carry, but then did not provide a motor grade. Id. He remarked that "claimant statement of needing to rest after walking 45-50 feet is not supported by any of physical exam findings or observations of gait made by any of medical examiner" [*sic*], and that "simply listing dx [diagnoses] is not sufficient evidence to base functional conclusions on." Id. Similarly, a few weeks later on March 23rd, Dr. J. Rabelo ("Dr. Rabelo"), another agency medical consultant, reviewed the medical evidence and concurred with Dr. Park's RFC assessment. (Tr. 503).

Finally, on February 17, 2010, Dr. Fernando Torres Santiago ("Dr. Torres"), an internist for the Disability Determination Program, examined the claimant. In evaluating claimant's hand function, Dr. Torres found that she had no joint pain, tenderness, or swelling, and that both her right and left hands were able to grip, grasp, pinch, and perform basic tasks, essentially having

"no hand limitations." (Tr. 494). He found each hand had muscular strength of 5/5 and indicated claimant's gait as normal. (Tr. 494-95).

## IV. LEGAL ANALYSIS

Plaintiff makes two main arguments. First, plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence in the record. ECF No. 21, at 3, 12. Second, plaintiff contests the ALJ's finding at step five that she could perform alternate work. Id. at 2, 10. For the reasons below, the court finds that the ALJ's findings are supported by substantial evidence, and Commissioner's determination that claimant is not disabled is affirmed.

### A. ALJ's RFC Determination

The ALJ determined that "the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except gross manipulation (handling) for over 6 hours in an 8-hour work day and fine manipulation (fingering) for more than 6 hours in an 8-hour work day." (Tr. 26). Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence, in part because (1) the ALJ did not properly weigh the treating physician's opinions, and (2) the ALJ improperly interpreted medical data when he should have enlisted the help of a medical expert. ECF No. 21, at 2-4, 15, 16-17.

#### 1. Weight of Treating Physician's Opinion

For the purposes of determining her RFC, plaintiff alleges that the ALJ should have given more weight to Dr. Berríos, her "treating source, since those sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of a claimants medical impairment" [*sic*]. ECF No. 21, at 16-17. To be given controlling weight, the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record." Polanco-Quinones v. Astrue, 477 Fed. App'x 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. §

404.1527(d)(2)). The ALJ, however, is not always required to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987). The ALJ can give less weight to a treating physician's opinion if he has *good reason* to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210-11 (D.P.R. 2009) (internal citation omitted).

Here, the ALJ did not give controlling weight to Dr. Berríos' medical evaluations because they were not supported by substantial evidence on the record. (Tr. 25). The ALJ explicitly noted that the medical reports in the record "fail to reveal evidence of persistent tenderness, muscular spasms, spinal deviations, or marked limitations in the range of motion of cervical and lumbar spine." (Tr. 24). Although the ALJ at step two found that plaintiff has a combination of severe impairments (Id.), the ALJ specifically stated that "the record reflects that the neurological system was essentially normal," "the claimant's cardiovascular and endocrine conditions do not impose work related limitations," and all "the examinations of the cervical and lumbosacral spine did not reveal marked degenerative changes." (Tr. 25). Further, the ALJ credited the RFC assessments from the state medical consultants, Dr. Park[2] and Dr. Cortijo, in that they both found "claimant able to lift and carry twenty pounds occasionally and ten pounds frequently, to sit and stand/walk for six hours in an eight hour work day and to otherwise function normally in activities not requiring frequent climbing or stooping." (Tr. 25). The ALJ found that this RFC was "supported by a longitudinal analysis of the evidence on the record as a whole," and that "Dr. Berríos' reports do not contain clinical signs and laboratory findings significantly different from those of the consultants." (Tr. 25-26).

[2] The ALJ mistakenly referred to Dr. O'Neill as having made an RFC assessment (Tr. 25; see Tr. 454). However, as the Commissioner correctly points out in his the memorandum of law (ECF No. 24, at 5 n.3), the physician who appears to have completed the plaintiff's initial RFC assessment is Dr. Park (Tr. 455-62). This error then is inconsequential, as the ALJ—by citing Exhibit 5F—indicated he relied on the initial RFC assessment, which is signed by Dr. Park. (Tr. 25; see Tr. 462).

Further, the ALJ noted that Dr. Berríos' assessment of plaintiff's limitation to "a very narrow range of sedentary work" was not supported "by [Dr. Berríos'] own findings" either. (Tr. 25). For example, the ALJ stated that Dr. Berríos[3] "did not describe gait abnormalities or report measurements indicative of muscle atrophy or weakness" to support her evaluation that plaintiff was limited to sitting, standing, and walking for less than two hours in a regular work day. Id. Also, the ALJ noted that, according to Dr. Cortijo, Dr. Berríos reported that plaintiff could never lift or carry, but then did not provide a motor grade. (Tr. 25, 487). In contrast, the ALJ summarized the findings of the state medical doctors noting that, "while MRIs of the lumbar spine . . . and of the cervical spine . . . were interpreted as indicative of bulging, dissecation, and degeneration of the L4-L5 and L5-S1 discs [and] bulging of the C3-C4 disc, the physical examinations *did not* reveal sensory deficits, muscular weakness, motor atrophy, or reflex abnormalities" (Tr. 25) (emphasis added).

Thus, the ALJ made these comparisons to indicate the inconsistencies between the record as a whole, supported by several agency specialists, and the markedly different conclusions that Dr. Berríos put forth regarding plaintiff's range of mobility, motor strength, and hand dexterity. It is within the purview of the ALJ to assess state physicians' reports, as well as the entire record to determine if such reports are corroborated, and doing so can constitute substantial evidence to support an RFC determination. See Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) (affirming the Secretary adopting findings of a Board Certified Internist (a

[3] Again, it appears the ALJ made an inadvertent error in his decision, noting that—in Dr. Cortijo's report—Dr. Cortijo stated that "*Dr. Ramírez* did not describe gait abnormalities or report measurements indicative of muscle atrophy or weakness." (See Tr. 25) (emphasis added). This mistake is harmless error, however, as the ALJ makes clear that his decision to not lend controlling weight to Dr. Berríos, the treating physician, is in part based on Dr. Cortijo's evaluation of the unsupported medical determinations made by Dr. Berríos, and in fact, Dr. Cortijo's assessment mentions Dr. Berríos by name. (See Tr. 487).

non-examining medical advisor) and permitting those findings to comprise substantial evidence, in contrast to a treating physician's conclusory statement of disability).

Additionally, the ALJ credited two of the state medical doctors who came to similar conclusions about claimant's "capacity to grip, grasp, tap with the fingers, button a shirt, pick up a coin, and perform opposition of the fingers" as being normal. (Tr. 25). Although the ALJ mentioned Dr. Torres by name, who examined the claimant, it is unclear who the second doctor is that the ALJ is referencing. Id. However, this lack of clarity is of no consequence, since a review of the records by this court finds that a total of *three* state medical doctors, two of whom examined the claimant and one of whom is a state agency consultant, found that claimant essentially had "no hand limitations" (see Tr. 494, per Dr. Torres' examination) or that her hand limitations were, at most, minor (see e.g., Tr. 462, per Dr. Park's assessment from the record that grasp power was 4/5). Much as Dr. Méndez found upon examining plaintiff that her strength was "5/5 symmetrically in all extremities except for [her hands] at 4/5 (limited by pain)" (Tr. 446, 451), Dr. Torres similarly found that she had no joint pain, tenderness, or swelling in her hands, and that each hand had strength of 5/5. (Tr. 494). Dr. Park, who provided the agency's initial RFC assessment based on the entirety of the medical record, also determined that claimant had an unlimited ability for handling (gross manipulation), fingering (fine manipulation), reaching, and feeling, with motor strength of 5/5 and grasp power at 4/5. (Tr. 458, 462).

The fact that (1) the medical evaluations from the state doctors are consistent with each other, (2) that Dr. Berríos' findings are generally inconsistent with and unsupported by the longitudinal record, and (3) that the ALJ specifically noted these inconsistencies in his decision, all suffice as "good reasons" the ALJ provided for giving Dr. Berríos' medical evaluations less weight. See Polanco-Quiñones, 477 Fed. App'x at 746; see also Morales v. Comm'r of Soc. Sec.,

2 Fed App'x 34, 36 (1st Cir. 2001) (affirming, based on inconsistency and lack of corroboration with reports of two consultative physicians, ALJ's decision not to give controlling weight to treating physicians' opinions).

Furthermore, even though the ALJ acted within his discretion to not give controlling weight to Dr. Berríos' evaluations of the plaintiff, the ALJ consciously interpreted "the evidence in the manner most favorable" to the plaintiff to find an even more limited RFC than what had been suggested by the agency medical consultants. (Tr. 26). The original RFC determination by Dr. Park, with concurrences from Dr. Cortijo and Dr. Rabelo, noted that plaintiff was able to sit with normal breaks, stand, and walk for about six hours in an eight-hour work day, to push or pull in an unlimited capacity, and to generally lift/carry a range of ten to twenty pounds. (Tr. 456). Dr. Park assessed that claimant had an unlimited ability for handling (gross manipulation), fingering (fine manipulation), reaching in all directions, and feeling. (Tr. 458). In contrast, the ALJ adopted a modified RFC, specifically limiting plaintiff's RFC to sedentary work with handling and fingering not to exceed more than six hours in a typical work day. (Tr. 26). Thus, the ALJ did take into account all evidence on the record, including from Dr. Berríos and from plaintiff's own allegations of pain and of her symptoms, to alter the RFC to reflect plaintiff's abilities. (Tr. 27).

There is substantial evidence then for the ALJ's RFC determination. The ALJ did not improperly minimize Dr. Berríos' medical evaluations, and he provided the requisite good reasons for doing so. (See Tr. 25-27).

**2. Interpretation of Raw Medical Data**

Plaintiff argues that the "testimony of a medical expert" was "imperative" to understand the "complex accepted medical conditions." ECF No. 21, at 2-3. Plaintiff asserts that the "bare

medical findings that appear [in the case] are unintelligible to a lay person in terms of [RFC] and the ALJ is not qualified to make that connection himself." Id. at 3-4. Medical expert opinions are required for the ALJ to determine the extent to which a claimant's medical conditions limit his ability to perform work-related activities. To evaluate a claimant's RFC, an ALJ cannot rely on raw medical data; rather, he must look to physician's opinions to translate that evidence into functional terms. See Vega Valentín v. Astrue, 725 F. Supp. 2d 264, 271 (D.P.R. 2010) (citing Berríos López v. Sec'y of Health & Human Servs., 951 F.2d 427, 430 (1st Cir. 1991) (per curiam); Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 293 (1st Cir. 1986)).

Plaintiff's contention that the ALJ interpreted raw medical data is vague and unsupported, merely reciting legal standards without providing examples of where the ALJ allegedly engaged in this sort of prohibited interpretation in his decision. See ECF No. 21, at 2-3, 3-4. As to the merits, there is no indication that the ALJ interpreted raw data in determining a nuanced RFC for the plaintiff, instead of adopting completely either (1) the RFC determined by the agency doctors, or (2) the RFC determined by Dr. Berríos. (See Tr. 26). The ALJ was meticulous in noting that his decision to adopt the initial agency RFC (before changing it slightly) was based on "the aforementioned physical residual functional capacity from the State agency [being] supported by the longitudinal analysis of the evidence on the record as a whole." Id. Additionally, the ALJ specifically stated that he assessed claimant's impairments based on "the preponderance of the medical evidence of record, *as interpreted by the medical specialists from the Disability Determination Service, the State Agency*, [and] based on the clinical signs and laboratory findings on record." (Tr. 25) (emphasis added).

By his own accord, the ALJ then gave the claimant the benefit of the doubt, stating that he was "interpreting the evidence in the manner most favorable to her" in order to determine she

was "limited to a sedentary level of exertion" with manipulative limitations for handling and fingering. Id. Rather than rely on his own impression of plaintiff's health to make his determinations, the ALJ relied on the lack of consistency between the several agency medical experts and the singular treating physician, and pointed to the ways in which the agency doctors came to different conclusions about the plaintiff's RFC than Dr. Berríos. (Tr. 25). The ALJ also noted that his findings were made on the basis of substantiated medical reports, and as such, discredited Dr. Berríos' "conclusions that claimant's capacity to perform sustained work activity on a regular basis is markedly restricted as a result of her impairments" because they were "not supported by her own medical findings, nor by those on the whole record." (Tr. 27). On the other hand, the ALJ found that the state medical doctors' consistent evaluations with respect to plaintiff's mobility, motor strength, and hand grip were substantiated by MRIs and lab results that "did not reveal marked degenerative changes" and that showed her "neurological system was essentially normal." (Tr. 25).

Thus, the ALJ did not interpret raw medical data in determining that the plaintiff is not disabled.

**B. ALJ's Finding that Plaintiff Could Perform Other Work that Exists in Significant Numbers in the National Economy**

Plaintiff also contests the ALJ's conclusion that she "could perform other alternate work." ECF No. 21, at 10. Plaintiff argues that the hypothetical presented by the ALJ to the vocational expert ("VE"), Mr. Festa, did not accurately reflect all of her limitations. Id. at 2. Plaintiff notes that, "at the hearing, [the VE] was posed with very limited hypotheticals which did not took into consideration the treating residual capacities assessment reported by [Dr. Berríos]" [*sic*]. Id. at 13. The hypothetical questions posed to the VE must accurately reflect the claimant's functional work capacity. Vega Valentín, 725 F. Supp. 2d at 271 (citing Arocho v.

Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)). However, hypotheticals posed to the vocational expert only need to "'reasonably incorporate [ ] the disabilities *recognized by the ALJ*'" for the expert's response to constitute substantial evidence. Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010) (quoting Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam)) (alterations and emphasis in original).

Since the ALJ's RFC determination is supported by substantial evidence in the record, what remains to be determined is whether the RFC was appropriately described and conveyed in the hypotheticals posed to Mr. Festa. The hypotheticals did correspond with the RFC the ALJ assigned to plaintiff because they emphasized sedentary, unskilled work with specific limitations for—what the ALJ termed—"use of hands" for set numbers of hours in a typical work day, specifications which mirrored the ALJ's assessment of claimant's physical abilities as being "limited to a sedentary level of exertion . . . in activities not involving handling and fingering over six hours in an regular eight hours work day" [*sic*]. (Compare Tr. 38-41, 43-45 with Tr. 26). Furthermore, once Mr. Festa testified that claimant could not perform her past relevant work as sewing machine operator (Tr. 38), it is apparent from the transcript that the ALJ was thorough in adjusting the hypotheticals to incorporate manipulative tasks (referring to the ability for both gross and fine manipulation) for maximum of two, three, four, or six hours in a typical eight hour work day to delineate the boundaries of claimant's abilities. (See Tr. 38, 40, 43, 45).

Upon altering the hypothetical to reflect manipulative tasks up to a maximum of six hours a day—which matched the ALJ's RFC assessment for plaintiff—Mr. Festa testified that two jobs were available in significant number in the national and regional economy for the plaintiff, including "order clerk . . . of which there exist 227,190 in the United States and 360 in Puerto Rico, as well as the job of final assembler . . . of which there are 239,950 in the United States and

8,630 in Puerto Rico." (Tr. 28, 45-46). To get to this point, the ALJ had carefully questioned Mr. Festa regarding how incorporating fine manipulation, in addition to gross manipulation, as well as how expanding the number of hours in a day for "the use of hands," would affect the availability of jobs in the economy that claimant could perform. (Tr. 39-40). In his decision, the ALJ seemed to have taken into account Mr. Festa's response at the hearing that "there are some jobs that are sedentary that are gross [manipulation;] [m]ost of them are fine manipulation and require the use of hands at least six hours." (Tr. 39). The ALJ, therefore, came to a reasoned conclusion, "*based on the testimony of the vocational expert*" (Tr. 28) (emphasis added), that claimant could perform the requirements of order clerk and final assembler because such jobs are sedentary and require "'six out of eight hours a day [for] the use of hands'" (Tr. 45-46), which matched the RFC the ALJ determined for claimant: sedentary work except gross and fine manipulation more than six hours in an eight hour work day. (Tr. 26).

Plaintiff maintains that the ALJ "diminish[ed] [her] pains, weakness, and swelling" when he noted in his decision that "she takes care of her personal needs." ECF No. 21, at 18. Although plaintiff cites persuasive precedent for this contention, including Hughes v. Astrue (705 F.3d 276, 278-79 (2013); see id. at 18-19), where the Seventh Circuit Court of Appeals criticized the ALJ for concluding in part that plaintiff's ability to do laundry, ride public transport, and grocery shop meant she could work, the ALJ here noted the quotidian activities performed by claimant as one of *many* factors he considered when determining the credibility of her symptoms. (Tr. 27). In making a credibility determination, the ALJ pointed to several corroborating parts of the record that indicated plaintiff's symptoms were not as detrimental to her ability to work as plaintiff or Dr. Berríos claimed. Id. For example, he stated that "the objective evidence of record establishes the presence of medical impairments, which can reasonably be expected to cause the symptoms

alleged [persistent pain in her neck and back and weakness and swelling of the hands], *but not to the extent claimed*." (Tr. 27) (emphasis added).

The ALJ did not discredit the existence of plaintiff's symptoms of pain, weakness, and swelling; rather, the ALJ adjusted the extent to which such symptoms affected her because of "the nature of claimant's treatment, her response to said treatment without adverse side effects and by the absence of persistently disabling muskoskeletal and/or neurological pathology." Id. Since the ALJ had already discredited Dr. Berríos' unsupported evaluation in determining plaintiff's RFC, he accordingly did not take into account Dr. Berríos' "conclusions that claimant's capacity to perform sustained work . . . is markedly restricted" when assessing the "intensity, persistence, and limiting effects" of claimant's symptoms. Id. Consequently, the ALJ stated that plaintiff's symptoms were not credible "to the extent they are inconsistent with the . . . residual functional capacity assessment," which was supported by "the preponderance of the medical evidence of record." Id.

Therefore, since the ALJ included the limitations he found credible in his nuanced RFC assessment, and appropriately incorporated this RFC into the hypotheticals he posed to the VE, the finding that claimant could perform other work is supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is hereby **AFFIRMED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of June, 2014.

s/ Marcos E. López
United States Magistrate Judge